IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2022

## JOHN E. SULLIVAN, JR. GST EXEMPT TRUST ET AL. v. FRANK G. SULLIVAN ET AL.

**Appeal from the Probate Court for Shelby County**
**No. PR020125       Kathleen N. Gomes, Judge**

_____

### No. W2022-00518-COA-R3-CV

_____

This case concerns the administration of a generation-skipping exempt trust. On review of the record, we conclude that the trial court's order is not a final judgment, so as to confer subject matter jurisdiction on this Court. Specifically, the trial court did not adjudicate: (1) the parties' requests for attorney's fees; (2) Appellees' prayer to remove David M. Sullivan as trustee; (3) Appellees' motion to disqualify David M. Sullivan from acting as legal counsel for the Trust; or (4) Trustee's motion for sanctions against Appellees and Appellees' legal counsel. Appeal dismissed.

### Tenn. R. App. 3 Appeal as of Right; Appeal Dismissed

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

David M. Sullivan and Paul Royal, Memphis, Tennessee, for the appellant, John E. Sullivan, Jr. GST Exempt Trust.

Janet Davis Lamanna, J. Mark Griffee, and Brent R. Watson, Memphis, Tennessee, for the appellees, Frank G Sullivan and John Sullivan, III.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by **memorandum opinion** when a formal opinion would have no precedential value. When a case is decided by **memorandum opinion** it shall be designated "**MEMORANDUM OPINION**," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL HISTORY

The issues raised in this appeal involve the administration of a testamentary generation-skipping exempt trust established under the last will and testament of John E. Sullivan ("Testator").[2]  The relevant background facts are not disputed.

In April 2005, Testator executed a will that contained specific gifts of tangible personal property and directed that the residuary of his estate be allocated to marital and family trusts if his wife survived him, and to the family trust should his wife not survive him.  The family trust established under Article Seven of Testator's will provides, in relevant part:

> Upon the death of the last to die of my spouse and me (the "division date"), the trustee shall allocate the remaining principal of all trusts then held under this instrument, which is not otherwise effectively disposed of, among as many separate equal trusts as shall be necessary to establish one trust named for each child of mine who is either living on the division date or then deceased leaving one or more descendants then living. Each GST Exempt Trust named for a child of mine that is created pursuant to the provisions of this paragraph and the GST administration provisions of this instrument, or was created under Article Five, shall be administered as provided in Article Eight of this instrument. Any trust named for any of my children that is not GST Exempt shall be designated "non-exempt and shall be administered as provided in Article Nine of this instrument.

---

[2] A testamentary trust is "[a] trust that is created by a will and takes effect when the settlor (testator) dies. Also termed *trust under will. Cf. inter vivos trust*; *continuing trust* (1).

> The provisions of an enforceable testamentary trust are set forth in a valid will. At minimum, therefore, there must have been compliance with the formal execution requirements applicable to wills generally. The testator and the attesting witnesses, for example, must have signed the will. A testamentary trust arises when title to a portion or all of the decedent's probate estate is transferred from the executor or personal representative to the testamentary trustee. Thus, a testamentary trust cannot arise until after the testator dies. Only then does the probate property come into existence, because only then does the will speak."

*Trust*, *Black's Law Dictionary* (11th ed. 2019) (quoting *Loring: A Trustee's Handbook* § 2.1.2, at 45 (Charles E. Rounds Jr. & Charles E. Rounds III eds., 2008)).

A generation-skipping trust is "[a] trust that is established to transfer (usu. principal) assets to a skip person (a beneficiary more than one generation removed from the settlor).  The transfer is often accomplished by giving some control or benefits (such as trust income) of the assets to a nonskip person, often a member of the generation between the settlor and skip person." ***Id.***

Article Eight provides:

Any GST Exempt Trust named for any child of mine shall be administered as follows:

A. Commencing as of the division date, the trustee shall distribute to any one or more of my child and my child's descendants living at the time of the distribution as much of the net income and principal of the trust, even to the extent of exhausting principal, as the trustee determines from time to time to be required for the health, education, maintenance and support of my child and my child's descendants; provided, however, that:

1. The trustee shall add any undistributed net income to principal from time to time, as the trustee determines;

2. My primary concern during the period described in this paragraph is to preserve trust principal for ultimate distribution to the child's descendants while at the same time reasonably providing for the health, education, maintenance and support of the child and the child's descendants;

3. No distribution made under this paragraph to a descendant of the child shall be charged as an advancement; and

4. The trustee may make unequal distributions to the beneficiaries or may at any time make a distribution to fewer than all of them, and shall have no duty to equalize those distributions.

B. If the child for whom the trust is named is living on the division date, then upon the death of the child, the trustee shall distribute the remaining principal of the trust to such one or more of my descendants as the child may appoint by will.

C. At such time at or after the death of the child for whom the trust is named, or, if later, the division date, the trustee shall distribute the principal of the trust not otherwise effectively disposed of in equal shares to the then living descendants of the child per stirpes or if none to my then living descendants per stirpes, and each share shall be held in a separate trust and administered as set forth in Article Ten, paragraph B.

Article Ten provides, in relevant part:

B. Despite the preceding provisions of this instrument, upon termination of any trust at the end of its stated term under this instrument:

1. Principal which is not effectively appointed and is otherwise distributable to a beneficiary for whom a trust then held hereunder is named shall be added to that trust; and

2. The trustee shall withhold any principal which is not effectively appointed and is otherwise required to be distributed to a beneficiary not covered by subparagraph 1 of this paragraph, who has not attained the age of forty (40) years or is disabled. The trustee shall retain any principal so withheld in a separate trust named for that beneficiary, to be administered as follows:

a. The trustee shall distribute to the beneficiary as much of the net income and principal of the trust, even to the extent of exhausting principal, as the trustee determines from time to time to be required for the health, education, maintenance and support of the beneficiary.

b. The trustee also shall distribute to the beneficiary if the beneficiary has attained the age of thirty (30) years, such amounts of the principal of the trust as the beneficiary may from time to time request by written instrument delivered to the trustee during the life of the beneficiary, but until such time as the beneficiary has attained the age of thirty-five (35) years, the beneficiary may not request more than one-half (1/2) in value of the principal of the trust determined as of the date the beneficiary has attained the age of thirty (30) years.

c. The trustee also shall distribute to the beneficiary if the beneficiary has attained the age of thirty-five (35) years, such amounts of the principal of the trust as the beneficiary may from time to time request by written instrument delivered to the trustee during the life of the beneficiary, but until such time as the beneficiary has attained the age of forty (40) years, the beneficiary may not request more than one-half (1/2) in value of the principal of the trust determined as of the date the beneficiary has attained the age of thirty-five (35) years.

d. The trustee also shall distribute to the beneficiary if the beneficiary has attained the age of forty (40) years, such amounts of the principal of the trust, even to the extent of exhausting the principal, as the beneficiary may from time to time request by written instrument delivered to the trustee during the life of the beneficiary, even to the extent of exhausting principal, and upon distribution of all trust assets, the trust shall terminate.

e. Upon the death of the beneficiary for whom the trust is

named before withdrawal of the entire balance or complete distribution of the trust, or on the division date if that occurs after the death of the child, the trust shall terminate and the trustee shall distribute the principal of the trust as follows:

(1) If the child is living on the division date, to such one or more of the child's descendants as the child may appoint by will; or

(2) In default of effective appointment, in equal shares to the then living descendants of the child, per stirpes, or, if none, to my then living descendants, per stirpes and each share shall be held in a separate trust and administered as set forth in this paragraph B.

Testator died in August 2019. In October 2019, the generation-skipping exempt trust ("the Trust") established for one of Testator's children, John E. Sullivan Jr. (Mr. Sullivan), received its first distribution from Testator's estate. In 2020, Mr. Sullivan made several distributions from the Trust to his children, Frank G. Sullivan ("FGS") and John E. Sullivan, III ("JES"), and in May 2020 Mr. Sullivan appointed David M. Sullivan as co-trustee and successor trustee of the Trust. Mr. Sullivan died in November 2020, and David M. Sullivan ("Trustee") assumed duties as the sole trustee. JES was 35 years of age when Mr. Sullivan died; FGS was 33. They each had one minor child (collectively, "the great-grandchildren").

In August 2021, Trustee filed a complaint for declaratory judgment against FGS and JES (together, "Appellees") in the Probate Court for Shelby County. In his complaint, Trustee asserted that the controversy between the parties concerned:

(1) [Appelees'] entitlement to immediate distributions of trust principal; (2) the withholding of distributions to [Appellees] who are disabled; (3) the share of the trust principal that [Appellees'] two minor children are entitled to receive and whether a guardian *ad litem* should be appointed for them; and (4) what reports, if any, the trustee must give to [Appellees] when the trust instrument provides (a) the trustee in his sole discretion shall make accountings to beneficiaries when he deems advisable, and (b) the trustee is not required to make any current reports or accountings to any court or beneficiaries.

Trustee prayed for a declaratory judgment as to four counts:

- Count I: Frank G. Sullivan's requests for distributions
- Count II: John E Sullivan, III's requests for distributions
- Count III: Whether the Appellees' minor children are entitled to a share of the Trust principal

- Count IV: Frank G. Sullivan and John E. Sullivan, III's requests for reports

In his complaint, Trustee asserted that FGS and FES requested distribution of 50 percent of the Trust; that they were not entitled to such distributions under Article Ten (B); and that FGS and JES "would never be entitled to 50% of [the Trust] principal because at the time of his death John E. Sullivan, Jr. had four then living descendants and the Will provides each would receive an equal amount of trust principal. (Article Eight (C) at 5). The maximum amount each would receive is 25%., not the 50% [Appellees] claim[]." Trustee also asserted that a dispute has arisen with respect to whether FGS is disabled and therefore not entitled to any direct distribution under Article Ten (B)(2) because FGS "is ninety percent (90%) disabled and receives veterans benefits for his disabilities." Trustee also prayed for a declaration that he was not required to make any reports or accountings other than as he, in his sole discretion, deemed advisable. Trustee additionally prayed for attorney's fees and costs.

Following a hearing on August 31, 2021, the trial court appointed a *guardian ad litem* ("GAL") to investigate the allegations of the complaint and to determine the best interests of the great-grandchildren. The trial court's instructions to the GAL included an order directing the GAL to advise the court whether an attorney *ad litem* was necessary to represent the great-grandchildren in the matter.

In September 2021, Appellees filed a motion to dismiss for improper venue and a motion to set aside the trial court's order appointing the GAL. The trial court denied the motions by orders entered on November 1, 2021.

In October 2021, Appellees filed a motion to remove the Trustee pursuant to Tennessee Code Annotated section 35-15-706. Appellees asserted that Trustee was not only acting as a party to the lawsuit, but also as an attorney representing the Trust. They further asserted that Trustee was acting as the personal representative of Mr. Sullivan's estate, and that a motion to remove him as personal representative was pending in the Chancery Court for Knox County. Appellees also filed a motion to disqualify Trustee from acting as counsel for the Trust pursuant to rules 1.8 and 3.7 of the Tennessee Rules of the Supreme Court.

In November, Appellees filed subpoenas duces tecum to E-Trade Securities, LLC (E-Trade) and Thoroughbred Financial Services seeking all documents related to the Trust and Trustee from November 1, 2016, forward. On November 23, 2021, Trustee filed motions in his individual capacity and as Trustee seeking a protective order; to quash subpoenas for financial records; for sanctions; and for a restraining order and temporary injunction. In his motion, Trustee asserted that, under the Trust instrument, Appellees were not entitled to the financial information sought and prayed for a protective order an injunction prohibiting "discovery be conducted related to the Trust's financial condition or records, until the Court issues a ruling on the merits of the Declaratory Judgment

Complaint." He also prayed for sanctions against Appellees and Appellees' counsel for bad faith and misrepresentation about the subpoenas.

Appellees filed their answer on November 24, 2021. Appellees generally denied Trustee's positions. They prayed for a declaration that they are the only two "current and mandatory beneficiaries of the Trust"; that they are not disabled; that they are entitled to a distribution of 50 percent of the Trust principal at age 30 and the remainder at age 40; that Trustee be required to account for Trust assets and expenditures; for removal of Trustee and appointment of a successor trustee by Appellees; and for attorney's fees.

Following a November 29 hearing by Zoom on Trustee's motion to quash subpoenas and for a temporary restraining order, on December 2 the trial court directed the Trustee to provide the GAL with information about the Trust assets by December 13, 2021, and ordered that the information remain confidential pending further orders of the court. The trial court ordered the parties to conduct no discovery pending further orders and set the declaratory judgment action to be heard on January 24, 2022. On December 2, the trial court also entered an order granting Trustee's motion for a temporary restraining order and to quash the subpoenas for financial records.

On December 7, 2021, Trustee filed a notice of compliance with the trial court's order to provide financial records to the GAL. The GAL filed her initial report on January 6, 2022, and a corrected report on January 18.[3] The GAL determined that the Trust required distribution of the Trust assets per stirpes and not per capita, and that the great-grandchildren therefore were not entitled to a share of the Trust. She also determined that the appointment of an attorney *ad litem* was not appropriate and that, with respect to the Trustee's duty to report, "the [c]ourt must determine whether the Trustee is justified in withholding the information from the beneficiaries, or whether it is being done to control, harass or punish the beneficiaries based on the perceptions the Trustee has regarding the beneficiaries."

On January 17, 2022, Trustee filed an objection to the GAL's report and a motion to appoint an attorney *ad litem* for the great-grandchildren. He also filed a motion to amend the complaint for declaratory judgment to name the great-grandchildren as Appellees, and Appellees filed a response in opposition to Trustee's motion to amend.

The trial court heard the motions by Zoom on January 24, 2022. By order entered on February 10, the trial court denied Trustee's motion to appoint an attorney *ad litem* for the great-grandchildren and Trustee's motion to amend the complaint. On February 14, Appellees filed psychiatric reports attesting that neither Appellee suffered from a disability

---

[3] In her original report, the GAL incorrectly identified the relevant article of the Trust. She corrected her report to correctly reference Article Eight.

that would prevent him from managing his financial affairs.

On February 21, 2022, the trial court entered a "partial order" on Trustee's complaint for declaratory judgment. The trial court determined that Article Eight (c) is not ambiguous, that it provides for distribution of the Trust to the "then living descendants of the children, per stirpes"; that FGS and JES are the only two beneficiaries of the trust; and that the interests in the Trust are to be held in separate sub-trusts and administered pursuant to Article Ten (B). The trial court determined that, since FGS and FES were both more than 30 years of age when Mr. Sullivan died, they each were entitled to an immediate distribution of one-half of his sub-trust principal and for additional distributions in accordance with Article Ten. The trial court ordered the Trustee to make immediate distributions from the sub-trusts "in accordance with the above so long as a medical affidavit completed by a physician, testifying that the Appellees are competent to manage their financial affairs, is filed with th[e] [c]ourt within thirty (30) days." The trial court reserved any objections by the Trustee to the affidavits pending a hearing on the matter. It also reserved the Appellees' request for attorney's fees and costs and "a determination as to the timing, method, and disclosure of information by Trustee to the Appellees related to the Trust and their separate sub-trusts" to be decided at a hearing set for February 21, 2022.

Following the February 21 hearing, the trial court entered its "second order" on Trustee's complaint for declaratory judgment on March 31, 2022. The trial court reiterated the determinations made in its partial order and "affirmatively" found that neither FGS nor JES "are disabled, under legal disability, or inflicted with any condition (whether temporary or permanent) which substantially would impair their ability to transact ordinary business, and both are competent to receive distributions from the Trust." The trial court ordered the Trustee to provide sufficient evidence of the Trust assets to allow Appellees to determine the value of their separate sub-trusts and distributions from the trusts "[c]ontemporaneously with the Trustee's immediate distributions to the [Appellees.]" The trial court reserved the issue of attorney's fees.

The Trustee filed a notice of appeal to this Court on April 25, 2022. On April 26, Appellees filed a Tennessee Rules of Civil Procedure Rule 60 motion for correction of the trial court's February 21 order on April 26, 2022. In their motion, Appellees submitted that the trial court's order "incorrectly provided in paragraphs 8 and 9 that any requests made by each individually named [Appellee] for distributions from the Trust until age 35 or age 40 must be 'for his health, education, maintenance, or support.' However, the language in Article Ten (B) of the Trust does not limit [Appellees] to only requesting distributions for their health, education, maintenance or support." The Trustee filed a motion to dismiss Appellees' Rule 60 motion for lack of subject matter jurisdiction on May 5, asserting that, because a notice of appeal had been filed, the Rule 60 motion could only be granted with leave of this Court. This Court remanded Appellees' motion for correction to the trial court on June 21, and the trial court denied the motion on July 25, 2022.

In the meantime, on April 28, 2022, Trustee filed a motion pursuant to Rule 62.04 of the Tennessee Rules of Civil Procedure to stay enforcement and execution of the trial court's judgment pending appeal. Appellees filed a response in opposition to Trustee's motion to stay on May 31. The trial court denied Trustee's motion to stay by order entered June 30, 2022. Trustee filed a motion for expedited review of the order pursuant to Rule 7(a) of the Tennessee Rules of Appellate Procedure; we denied the motion on July 18, 2022. Briefing of the matter was completed on September 22, 2022.

## II. ISSUES

The Trustee raises the following issues for our review, as stated in his brief:

I. Whether the phrase per stirpes limits the designated multigenerational class of beneficiaries consisting of the then living descendants of decedent to only those descendants closest in kinship to decedent.

II. Whether the trial court abused its discretion by denying trustee's motions to amend the complaint and to appoint an attorney ad litem.

Appellees raise the additional issues of whether this Court lacks subject matter jurisdiction because this appeal is time-barred under the Tennessee Rules of Appellate Procedure. It also asserts that it is entitled to attorney's fees on appeal.

## III. STANDARD OF REVIEW

Subject matter jurisdiction involves a court's authority to adjudicate a matter, *New v. Dumitrache*, 604 S.W.3d 1, 14 (Tenn. 2020) (citations omitted), and is a threshold inquiry which must be addressed by the court. *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) (citation omitted).

The construction of a will presents a question of law that we review *de novo* with no presumption of correctness. *In re Estate of Clifton*, 633 S.W.3d 557, 559 (Tenn. Ct. App. 2021). The construction of a trust instrument also is a question of law that we review *de novo* with no presumption of correctness for the trial court's judgment. *Harvey ex rel. Gladden v. Cumberland Trust and Inv. Co.*, 532 S.W.3d 243, 252 (Tenn. 2017).

It is well-settled that a testator has the "absolute right" to direct the disposition of his/her property. *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990) (citations omitted). Accordingly, when construing a will the courts seek to ascertain and enforce the testator's directions. *Id.* "The basic rule in construing a will is that the court shall seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy. That intention is to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument." *Id.*

(citations omitted). *Id.* (citations omitted). We will presume that every word contained in the will has some meaning and, when the will has been drafted by legal counsel, technical words will be construed in accordance with their technical meanings. *Id.* (citations omitted). With this standard in mind, we turn to the issues raised by the parties.

## IV. ANALYSIS

### Subject Matter Jurisdiction

We turn first to whether we have subject matter jurisdiction over this appeal. Generally, a notice of an appeal as of right to this Court must be filed within 30 days of entry of the judgment appealed from. Tenn. R. App. P. 3(e) and 4(a). The failure to file a timely notice of appeal within 30 days of entry of the trial court's final judgment precludes this Court from assuming subject matter jurisdiction. *Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009) (citations omitted). A late-filed notice of appeal must be dismissed for lack of jurisdiction. *Arfken & Assoc., P.A. v. Simpson Bridge Co., Inc.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002) (holding that, absent intervening proceedings as provided by the Rules, the time for filing a notice of appeal runs from the date of entry of the trial court's judgment disposing of all the claims of all the parties and not upon entry of a subsequent judgment that is identical to the first.)

Appellees assert that the Trust's March 31, 2022 notice of appeal in this case was untimely because it was filed beyond the 30-day period mandated by the Tennessee Rules of Appellate Procedure. Appellees contend that the Trust seeks to reverse the trial court's February 21, 2022 order, which "is the order that conclusively determined the Trust beneficiaries and ordered that the distributions take place so long as affidavits from physicians were filed with the trial court within thirty (30) days." They submit that the trial court's March 31 order did not affect the relief granted on February 21, 2022, and that the issue regarding who should take under the Trust was "conclusively decided" by the court's February order. Appellees rely on *In Re Estate of Wilson*, No. M2021-01549-COA-R3-CV (Tenn. Ct. App. May 11, 2022), for the proposition that the 30–day period ran from February 21 because the February order decided the parties' substantive rights.[4]

It is well-settled that, under Rule 3 of the Tennessee Rules Appellate Procedure, we assume jurisdiction over appeals from final judgments only. *Bayberry Assoc. v. Jones,* 783 S.W.2d 553, 559 (Tenn. 1990). Rule 3(a) of the Tennessee Rules of Appellate Procedure provides, in relevant part:

---

[4] Without addressing the merits of Appellees' analysis of *In Re Estate of Wilson*, we observe that the Opinion is designated "Memorandum Opinion" as permitted by Rule 10 of the Rules of the Court of Appeals of Tennessee. *In Re Estate of Wilson*, No. M2021-01549-COA-R3-CV, 2022 WL 2195526, at *1 n.1 (Tenn. Ct. App. May 11, 2022). Therefore, it may not be relied on in any unrelated case. *Id.* Appellees' reliance on *Estate of Wilson* accordingly is misplaced.

In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

This is not an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Civil Procedure, and the trial court did not certify its March 31, 2022 order as final and appealable pursuant to Tennessee Rules of Civil Procedure Rule 54.02.[5] We have long

---

[5] This Court has observed:

> Rule 54.02 "is an exception to Rule 3 that permits the trial court, without permission from the appellate court, to certify an order as final and appealable, even if parts of the overall litigation remain pending in the trial court." *Johnson v. Nunis*, 383 S.W.3d 122, 130 (Tenn. Ct. App. 2012). It allows "the trial court to convert an interlocutory ruling into an appealable order." *Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 49 (Tenn. 2012). However, "the trial court's authority to direct the entry of a final judgment is not absolute." *Brentwood Chase Cmty. Ass'n v. Truong*, No. M2014–01294–COA–R3–CV, 2014 WL 5502393, at *2 (Tenn. Ct. App. Oct. 30, 2014) (citing *Crane v. Sullivan*, No. 01A01–9207–CH–00287, 1993 WL 15154, at *1–2 (Tenn. Ct. App. Jan. 27, 1993)). "Rule 54.02 does not apply to all orders that are interlocutory in nature." *Konvalinka v. Am. Int'l Grp., Inc.*, No. E2011–00896–COA–R3–CV, 2012 WL 1080820, at *3 (Tenn. Ct. App. Mar. 30, 2012). An order can only be certified as final in limited circumstances. *Johnson*, 383 S.W.3d at 130. Because Rule 54.02 provides that a trial court may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," the order certified as final must be dispositive of an entire claim or a party. *Bayberry*, 783 S.W.2d at 558. In other words, the order at issue must dispose of at least one entire claim or resolve all of the claims against at least one party. *Konvalinka*, 2012 WL 1080820, at *3. "The purpose of the certification rule is to enhance judicial economy and 'to prevent piecemeal appeals in cases which should be reviewed only as single units.' " *Cates v. White*, No. 03A01–9104–CH–00130, 1991 WL 168620, at *3 (Tenn. Ct. App. Sept. 4, 1991) (quoting *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10 (1980) ).
>
> Whether a particular order disposes of a distinct and separable "claim" that is subject to Rule 54.02 certification is a question of law reviewed de novo. *Ingram*, 379 S.W.3d at 238; *Brown v. John Roebuck & Assocs., Inc.*, No. M2008–02619–COA–R3–CV, 2009 WL 4878621, at *5 (Tenn. Ct. App. Dec. 16, 2009). If the trial court certifies a judgment as final, but it is not conclusive as to an entire claim or party, an appeal from it will be dismissed even though the trial court decided to treat the order as final. *FSG Bank, N.A. v. Anand*, No. E2011–00168–COA–R3–CV, 2012 WL 554449, at *4 (Tenn. Ct. App. Feb. 21, 2012). Without a final adjudication of at least one claim, Rule 54.02 is simply inapplicable. *King v. Kelly*, No. M2015–02376–COA–R3–CV, 2016 WL 3632761, at *4 (Tenn. Ct. App. June 28, 2016), *perm app. denied* (Tenn. Jan. 19, 2017).

stated that, absent an exception provided by the Rules or by statute, a judgment is final when it adjudicates all the claims asserted in the case and leaves "nothing else for the trial court to do." ***Discover Bank v. Morgan***, 363 S.W.3d 479, 488 n.17 (Tenn. 2012) (quoting ***In re Estate of Henderson***, 121 S.W.3d 643, 645 (Tenn. 2003); ***Davis v. Davis***, 224 S.W.3d 165, 168 (Tenn. Ct. App. 2006) (quoting ***Mosley v. Mosley***, No. E2000–01445–COA–R3–CV, 2000 WL 1859006, at *2 (Tenn. Ct. App. Dec. 20, 2000) (quoting ***Hoalcraft v. Smithson***, 19 S.W.3d 822 (Tenn. Ct. App. 1999)))).

Upon review of the record in this case, we have determined that this Court does not have subject mater jurisdiction over this appeal because the trial court has not entered a final judgment in the matter. As noted above, the trial court specifically reserved the parties' requests for attorney's fees in its February 21 and March 31, 2022 orders. "'This Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final.'" ***E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.***, No. M201700732COAR3CV, 2018 WL 1831116, at *2 (Tenn. Ct. App. Apr. 17, 2018) (quoting ***City of Jackson v. Hersh***, No. W2008–02360–COA–R3–CV, 2009 WL 2601380, at *4 (Tenn. Ct. App. Aug. 25, 2009)).

It also appears from the record transmitted to this Court that Appellees' prayer to remove David M. Sullivan as trustee, which Appellees asserted by motion in October 2021 and in their answer in November 2021, has not been adjudicated by the trial court. It further appears that Appellees' October 2021 motion to disqualify David M. Sullivan from acting as legal counsel for the Trust has not been adjudicated by the trial court. It also appears that the trial court has not adjudicated Trustee's November 2021 motion for sanctions against Appellees and Appellees' legal counsel. Accordingly, the trial court has not entered a final, appealable order in this case, and we do not have subject matter jurisdiction over this appeal.

## V. CONCLUSION

For the foregoing reasons, the appeal is dismissed, and the case is remanded to the trial court for further proceedings. Costs of the appeal are taxed one-half to the Appellees, Frank G Sullivan and John Sullivan, III, and one-half to the Appellant, John E. Sullivan, Jr. GST Exempt Trust, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

***E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.***, No. M201700732COAR3CV, 2018 WL 1831116, at *3 (Tenn. Ct. App. Apr. 17, 2018).